**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

SAUN C. ORTIZ,
            Appellant,

            v.

DEPARTMENT OF THE AIR FORCE,
            Agency.

DOCKET NUMBER
DE-0752-22-0062-I-1

DATE: January 25, 2023

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Saun C. Ortiz, Syracuse, Utah, pro se.

Jason D. Marsh, Esquire, Hill Air Force Base, Utah, for the agency.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member
Member Leavitt dissents without an opinion.

**FINAL ORDER**

¶1      The appellant has filed a petition for review and the agency has filed a cross petition for review of the initial decision, which affirmed the appellant's removal from Federal service. For the reasons discussed below, we GRANT the petition for review, DENY the cross petition for review, and AFFIRM the initial decision

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

AS MODIFIED. We AFFIRM the following findings of the administrative judge: (1) the agency proved one of two specifications of the disregard of directive charge; (2) the agency failed to prove the unauthorized absence charge; and (3) the appellant failed to prove his affirmative defenses. We REVERSE the administrative judge's finding that the agency proved the lack of candor charge, we VACATE the administrative judge's penalty analysis, and we ORDER the agency to substitute a 7-day suspension in place of removal.

## BACKGROUND

¶2   The appellant worked for the agency as a WG-10 Composite/Plastic Fabricator until his removal from Federal service on November 16, 2021. Initial Appeal File (IAF), Tab 4 at 10. The events surrounding the appellant's removal are as follows. On April 28, 2021, the appellant reported to the agency that his daughter was exhibiting symptoms of COVID-19 and, on the next day, he reported that his daughter had tested positive for COVID-19. IAF, Tab 19 at 38. The agency's occupational medicine department (OMS) instructed the appellant to quarantine for 14 days and not to report to work. *Id.* On May 13, 2021, the appellant reported to OMS that his wife tested positive for COVID-19. *Id.* OMS recommended that the appellant quarantine for an additional 14 days. *Id.* The appellant reported to work on May 27, 2021. IAF, Tab 4 at 52. The appellant later submitted to the agency photos of two COVID-19 home testing kits, appearing to have positive results, with his wife and daughter's names written on the test cards. *Id.* at 17-22.

¶3   On June 10, 2021, the appellant's supervisor received an email from the appellant's account stating that the sender was the appellant's friend, the appellant was incoherent due to medications he was taking, and that he was requesting leave without pay for the day. IAF, Tab 4 at 44, Tab 19 at 21. The actual email is not in the record. On the same day, the appellant's second-level supervisor requested that the police perform a wellness check at the appellant's

address of record. IAF, Tab 4 at 42-45. The appellant was not at home but the police spoke to the appellant's wife. *Id.* After the wellness check, the appellant's second-level supervisor called the appellant's wife. *Id.* at 41. During the call, the appellant's wife stated that her daughter had an exposure to COVID-19 at school but that "[n]o other Covid incidents happened." *Id.*; IAF, Tab 19 at 33.

¶4    The appellant was absent from work on various dates over the next 2 weeks. To justify his absences, the appellant provided two medical notes from a chiropractor. IAF, Tab 4 at 39-40. The first was dated June 14, 2021, and excused the appellant from work on June 8 through 10, June 14, and June 21, 2021. *Id.* at 39. The second note was dated June 22, 2021, and excused the appellant from work on that day. *Id.* at 40. The appellant's supervisor was suspicious of the authenticity of the notes and called the medical office that issued them. IAF, Tab 19 at 21-22, 43-45. According to memoranda written by the appellant's supervisor and another agency witness, an unidentified woman answered the phone and claimed to have written the June 14 note, but she stated that she had not excused the appellant from work on June 21 and that he was not seen in the office on that day. *Id.* at 22, 45. She also stated that she did not write the June 22 note and that the appellant was not seen in the office on that day. *Id.* One agency witness who listened to the phone call initially declared that the woman who answered the phone was the appellant's doctor, but he later asserted that he did not know who answered the phone. *Id.* at 43; IAF, Tab 4 at 38.

¶5    On October 4, 2021, the agency proposed to remove the appellant based on three charges: (1) lack of candor; (2) disregard of directive; and (3) unauthorized absence. IAF, Tab 4 at 23-25. The deciding official sustained all the charges and specifications and removed the appellant from Federal service effective November 16, 2021. *Id.* at 11. The appellant filed a Board appeal and did not request a hearing. IAF, Tab 1 at 1-2. The administrative judge issued an initial decision based on the written record, which sustained the lack of candor and disregard of directive charges, did not sustain the unauthorized absence charge,

denied the appellant's affirmative defenses of disability discrimination under the theories of disparate treatment and failure to accommodate, and upheld the penalty of removal. IAF, Tab 22, Initial Decision (ID) at 12-31. The appellant has filed a petition for review and the agency has filed a cross petition for review. Petition for Review (PFR) File, Tabs 1, 3.

## DISCUSSION OF ARGUMENTS ON REVIEW

¶6    On review, the appellant reasserts the same arguments that he raised before the administrative judge and argues that he did not engage in the conduct as alleged. PFR File, Tab 1 at 3-5. The agency asserts in its cross petition for review that the administrative judge erred in not sustaining the unauthorized absence charge. PFR File, Tab 3 at 12-14.

¶7    As a threshold matter, we address the two undated and unsigned witness statements that the appellant attached to his petition for review. PFR File, Tab 1 at 6-7. The Board generally will not consider evidence submitted for the first time with a petition for review absent a showing that it was unavailable before the record was closed before the administrative judge despite the party's due diligence. *Avansino v. U.S. Postal Service*, 3 M.S.P.R. 211, 213-214 (1980). To constitute new and material evidence, the information contained in the documents, not just the documents themselves, must have been unavailable despite due diligence when the record closed. *Grassell v. Department of Transportation*, 40 M.S.P.R. 554, 564 (1989); 5 C.F.R. § 1201.115(d). The appellant has not shown that the information contained in the witness statements was unavailable prior to the close of the record, and thus, we do not consider them. We now address each of the three charges in turn.

The agency has not proved the lack of candor charge by preponderant evidence.

¶8    To prove a lack of candor charge, the agency must prove by preponderant evidence that the employee gave incorrect or incomplete statements and that he did so knowingly. *Fargnoli v. Department of Commerce*, 123 M.S.P.R. 330,

¶¶ 16-17 (2016). Preponderant evidence is the degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue. 5 C.F.R. § 1201.4(q). The agency charged the appellant with three specifications of lack of candor, as set forth below. IAF, Tab 4 at 23.

¶9    The first specification charged that the appellant lacked candor when he told the agency that his wife and daughter tested positive for COVID-19. *Id.* The administrative judge found that the agency met its burden based on written statements from three agency officials recounting a call with the appellant's wife, wherein she purportedly stated that her daughter had been exposed to COVID and that there were no other "Covid incidents." ID at 12-13. We find that the agency has not presented sufficient evidence to meet its burden for this charge. First, the statements from the appellant's wife are recounted secondhand by agency officials. Although hearsay evidence may constitute preponderant evidence, we find that in this case, it does not. *See Borninkhof v. Department of Justice*, 5 M.S.P.R. 77, 87 (1981) (setting forth various factors that affect the weight to be accorded to a hearsay statement, including, among others, the availability of the person with firsthand knowledge to testify, whether the statement is sworn, the agency's explanation for failing to obtain a sworn statement, and whether the declarant was a disinterested witness). At the time the appellant's wife made the statement, she was angry with the situation. IAF, Tab 4 at 41, Tab 18 at 16-17. The appellant has also asserted that his wife was upset that the agency, which she did not work for, asked her about her medical information. IAF, Tab 11 at 4. The agency has not explained why it did not submit a sworn statement or deposition testimony from the appellant's wife affirming that she and her daughter did not test positive for COVID-19. Second, the administrative judge considered that the appellant's testimony surrounding his wife's COVID-19 test was inconsistent, and therefore she found that the photos of the COVID-19 testing kits were unreliable with nothing in the record to authenticate them. ID at 13.

However, the appellant's statements that the administrative judge deemed to be inconsistent come from notes that the appellant's supervisor took of calls between the two and the supervisor's transcription of voicemails from the appellant. IAF, Tab 4 at 47-52, Tab 19 at 20; ID at 9-10. The supervisor's notes do not identify which entries are transcribed voicemails and which are notes of telephone calls. IAF, Tab 4 at 47-52. Accordingly, we are unable to determine which entries, if any, reflect the appellant's exact words. Although we acknowledge that the statements, as recounted by the agency, are not entirely consistent, we find that as a whole, the agency has presented insufficient evidence to prove by preponderant evidence that the appellant's statements regarding his wife and daughter testing positive for COVID-19 were untruthful. We therefore do not sustain this specification.

¶10     The second specification charges that the appellant altered a medical note releasing him from duty on June 8-10 and June 14, 2021, to include an additional date, June 21, 2021. *Id.* at 23. The appellant has admitted that he added the June 21 date to the medical note and asserts that his doctor authorized him to do so. IAF, Tab 20 at 5. The administrative judge sustained the charge based on declarations from two agency witnesses attesting that, when they called the medical office to verify the note, an unidentified woman answered the phone and she claimed to be the person who signed the June 14 medical note, stated that the note did not include the June 21 date when she signed it, and confirmed that the appellant was not seen in the office on June 21 or 22. IAF, Tab 19 at 21-22, 43, 45. We give little weight to this hearsay evidence because the agency has not identified who answered the phone or her position in the medical office. *See Borninkhof*, 5 M.S.P.R. at 87. Further, the person who answered the phone was incorrect when she stated that the appellant was not seen in the office on June 22, 2021. The appellant's doctor provided a signed statement confirming that the appellant was seen in the office on that day. IAF, Tab 8 at 4. The agency has not explained why it did not submit a sworn statement or deposition

testimony from the appellant's doctor regarding the June 14 note.[2] We find that the appellant's explanation that his doctor authorized him to add June 21 to the medical note is plausible given his excused absences before and after June 21, and we note that there is no contrary evidence in the record. The agency's submission of unreliable hearsay evidence is insufficient to meet its burden of proof as to this specification.

¶11 The administrative judge did not sustain the third specification regarding alleged fabrication of a June 22 doctor's note. ID at 16-17. The parties did not challenge this finding on review and we find no error in it. Based on the foregoing, the lack of candor charge is not sustained.

<u>The agency proved the disregard of directive charge by preponderant evidence.</u>

¶12 A charge of disregard of directive requires the agency to demonstrate that a proper instruction was given and that the employee failed to follow it, without regard to whether the failure was intentional or unintentional. *See Hamilton v. U.S. Postal Service*, 71 M.S.P.R. 547, 555-56 (1996). The agency charged that, on June 8 and 10, 2021, the appellant failed to properly request leave in accordance with the procedures set forth in a March 1, 2021 memorandum. IAF, Tab 4 at 23. The agency does not explain how the appellant failed to follow the leave requesting procedures on June 8, 2021.[3] The administrative judge addressed only June 10 in the initial decision, and she sustained the specification. ID at 17-18. On this date, the appellant's supervisor asserts that he received an email from the appellant's account stating that the sender was the appellant's

---

[2] The administrative judge issued a subpoena to the appellant's doctor for "[c]opies of any and all 'Authorizations for Absence' records you, or anyone on your behalf, created in June 2021 for [the appellant]." IAF, Tab 10. The agency did not file any responsive documents before the administrative judge.

[3] The agency's close of record submission states that the appellant failed to report to work on June 8, 2021. IAF, Tab 19 at 11. However, it does not state whether or not the appellant requested leave on that day, and if he did, whether that request met the requirements of the March 1 memorandum.

friend, that the appellant was incapacitated due to medication he was taking, and that he was requesting leave without pay for the day. IAF, Tab 4 at 44, Tab 19 at 21. The email is not in the record but appears to be quoted in an unsigned and undated police report that was prepared after the June 10 wellness check. IAF, Tab 4 at 44-45. Assuming that the police report accurately quotes the email, we find that its content complies with the requirements set forth in the March 1 memorandum in most respects except that it does not identify a call back number. *Id.* at 44, 68. However, the March 1 memorandum prohibits emailed leave requests and requires that the appellant, or a third party on the appellant's behalf, call the appellant's supervisor within the first 2 hours of his shift if he is requesting leave for the day. *Id.* at 68. There is no evidence that the appellant, or anyone on his behalf, called his supervisor on June 10 to request leave. Accordingly, the agency has proved this specification.

¶13    The administrative judge did not sustain the second specification charging that the appellant abused drugs. ID at 18-19. The parties do not address this specification on review and we find no error in the administrative judge's finding. When more than one event or factual specification supports a single charge, proof of one or more, but not all, of the supporting specifications is sufficient to sustain the charge. *Burroughs v. Department of the Army*, 918 F.2d 170, 172 (Fed. Cir. 1990). Accordingly, we sustain the charge of disregard of directive.

<u>The agency has not proved the unauthorized absence charge.</u>

¶14    The agency charged that the appellant's leave from April 28 through May 26, 2021, was unauthorized because the agency would not have approved the absence had it been aware of the appellant's untruthfulness about his family's health. IAF, Tab 4 at 23. The administrative judge did not sustain the charge because she found that the leave was authorized by the agency. ID at 20. We agree. In order to prove its charge, the agency must prove that the appellant gave untruthful information, as charged in the specification. As stated in paragraph 9 above, the agency has failed to do so.

<u>We affirm the administrative judge's denial of the appellant's disability discrimination affirmative defense.</u>

¶15        The parties do not challenge the administrative judge's findings as to the denial of the appellant's disability discrimination claims, and we find no material error in them.  ID at 21-27.[4]  We therefore affirm the administrative judge's findings on this point.

<u>The penalty of removal exceeds the bounds of reasonableness.</u>

¶16        The parties do not challenge the administrative judge's finding that a nexus exists between the appellant's misconduct and the efficiency of the service, and we discern no error in it.  ID at 28.  When the Board sustains fewer than all of the agency's charges, the Board may mitigate to the maximum reasonable penalty as long as the agency has not indicated either in its final decision or in the proceedings before the Board that it desires that a lesser penalty be imposed for fewer charges.  *Lachance v. Devall*, 178 F.3d 1246, 1260 (Fed. Cir. 1999).  There is no such evidence in the record.  The Board has identified several factors as relevant in determining the appropriateness of a penalty.  *See Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305-06 (1981).  The most important of these factors is the nature and seriousness of the offense.  *Boo v. Department of Homeland Security*, 122 M.S.P.R. 100, ¶ 18 (2014).  Among the considerations included in this factor are the relationship of the offense to the employee's duties, position, and responsibilities, including whether the offense was intentional or was frequently repeated.  *Id.*  The appellant worked for the agency for 6 years and does not appear to have had any performance problems during that time.  IAF, Tab 4 at 10.  The appellant did not hold a supervisory position.  *Id.*  The appellant was previously reprimanded and served a 3-day suspension for failure

---

[4] Since the issuance of the initial decision, the Board issued *Pridgen v. Office of Management & Budget*, 2022 MSPB 31, which, among other things, addressed the causation standard for proving discrimination on the basis of disability.  2022 MSPB 31, ¶¶ 39-40, 42.  Given the finding the appellant's disability was not a motivating factor in the agency's action, *Pridgen* does not affect the outcome of this matter.

to follow the agency's leave procedures. IAF, Tab 4 at 61, 64, 69-70. We have considered that on the date in question, the appellant made contact with the agency to inform his supervisor that he would be absent, albeit not in the way in which he was instructed. We have also considered the assertion that the appellant was incoherent due to his disability. *Id.* at 44. The appellant has also stated that he and his wife were having relationship troubles and he was experiencing pain based on his disability. IAF, Tab 18 at 16-17, Tab 20 at 4-5. The agency's table of penalties recommends a 5-day suspension to removal for a third offense of failure to request leave according to established procedures. IAF, Tab 4 at 104. Given these factors, we find that the penalty of removal exceeds the bounds of reasonableness and that a 7-day suspension is the maximum reasonable penalty.

**ORDER**

¶17      We ORDER the agency to cancel the removal and substitute a 7-day suspension. *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984). The agency must complete this action no later than 20 days after the date of this decision.

¶18      We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this decision. We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order. If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶19      We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has

taken to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b).

¶20 No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. 5 C.F.R. § 1201.182(a).

¶21 For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached. The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

**NOTICE TO THE APPELLANT REGARDING
YOUR RIGHT TO REQUEST
ATTORNEY FEES AND COSTS**

You may be entitled to be paid by the agency for your reasonable attorney fees and costs. To be paid, you must meet the requirements set forth at Title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203. If you believe you meet these requirements, you must file a motion for attorney fees and costs WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion for attorney fees and costs with the office that issued the initial decision on your appeal.

**NOTICE OF APPEAL RIGHTS**[5]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

---

[5] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. ____ , 137 S. Ct. 1975 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of

discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or

other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[6] The court of appeals must <u>receive</u> your petition for review within **60 days** of the <u>date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The

---

[6] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD: <u>        /s/ for            </u>

Jennifer Everling
Acting Clerk of the Board

Washington, D.C.



**DEFENSE FINANCE AND ACCOUNTING SERVICE**
**Civilian Pay Operations**

# DFAS BACK PAY CHECKLIST

The following documentation is required by DFAS Civilian Pay to compute and pay back pay pursuant to 5 CFR § 550.805. Human resources/local payroll offices should use the following checklist to ensure a request for payment of back pay is complete. Missing documentation may substantially delay the processing of a back pay award. **More information may be found at: https://wss.apan.org/public/DFASPayroll/Back%20Pay%20Process/Forms/AllItems.aspx.**

**NOTE: Attorneys' fees or other non-wage payments (such as damages) are paid by vendor pay, not DFAS Civilian Pay.**

☐ 1) Submit a **"SETTLEMENT INQUIRY - Submission"** Remedy Ticket. Please identify the specific dates of the back pay period within the ticket comments.

Attach the following documentation to the Remedy Ticket, or provide a statement in the ticket comments as to why the documentation is not applicable:

☐ 2) Settlement agreement, administrative determination, arbitrator award, or order.

☐ 3) Signed and completed "Employee Statement Relative to Back Pay".

☐ 4) All required SF50s (new, corrected, or canceled). **\*\*\*Do not process online SF50s until notified to do so by DFAS Civilian Pay.\*\*\***

☐ 5) Certified timecards/corrected timecards. **\*\*\*Do not process online timecards until notified to do so by DFAS Civilian Pay.\*\*\***

☐ 6) All relevant benefit election forms (e.g. TSP, FEHB, etc.).

☐ 7) Outside earnings documentation. Include record of all amounts earned by the employee in a job undertaken during the back pay period to replace federal employment. Documentation includes W-2 or 1099 statements, payroll documents/records, etc. Also, include record of any unemployment earning statements, workers' compensation, CSRS/FERS retirement annuity payments, refunds of CSRS/FERS employee premiums, or severance pay received by the employee upon separation.

**Lump Sum Leave Payment Debts:** When a separation is later reversed, there is no authority under 5 U.S.C. § 5551 for the reinstated employee to keep the lump sum annual leave payment they may have received. The payroll office must collect the debt from the back pay award. The annual leave will be restored to the employee. Annual leave that exceeds the annual leave ceiling will be restored to a separate leave account pursuant to 5 CFR § 550.805(g).



**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts**.**

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

    a. Employee name and social security number.
    b. Detailed explanation of request.
    c. Valid agency accounting.
    d. Authorized signature (Table 63).
    e. If interest is to be included.
    f. Check mailing address.
    g. Indicate if case is prior to conversion.  Computations must be attached.
    h. Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected (if applicable).

Attachments to AD-343

1. Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement (if applicable).
2. Copies of SF-50s (Personnel Actions) or list of salary adjustments/changes and amounts.
3. Outside earnings documentation statement from agency.
4. If employee received retirement annuity or unemployment, provide amount and address to return monies.
5. Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)
6. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.
7. If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases:  (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

    a. Must provide same data as in 2, a-g above.
    b. Prior to conversion computation must be provided.
    c. Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.